IN THE UNITED STATES COURT OF FEDERAL CLAIMS

KELLOGG BROWN & ROOT                )
SERVICES, INC.,                     )
                                    )
            Plaintiff,              )
                                    )     No. 13-169C
v.                                  )     Judge Bush
                                    )
THE UNITED STATES,                  )
                                    )
            Defendant.              )

<u>DEFENDANT'S MOTION TO DISMISS</u>

Pursuant to Rule for the Court of Federal Claims (RCFC) 12(b)(1), defendant, the United States, respectfully submits this motion to dismiss plaintiff, Kellogg Brown & Root Services, Inc.'s (KBR) complaint for lack of jurisdiction and for failure to comply with the statute of limitations:  KBR failed to bring breach of contract claims within six years of the breach for those claims having to do with the condition of the location in which it was directed to perform, and its other claims were not properly brought before the contracting officer for a decision prior to this lawsuit.

<u>BACKGROUND</u>

The Court is familiar with the underlying facts of this case from the filings in the related case of No. 12-780.  Nevertheless, some additional facts are necessary to address the claims raised in this complaint and for completeness sake.[1]

The merits of this case are primarily centered upon the application of an indemnity clause contained in the "Restore Iraqi Oil" (RIO) contract, between the Government and KBR for

---

[1]  Of course, we accept the facts in KBR's complaints as true, as we must, only for the purposes of this motion to dismiss.

"unusually hazardous risks".  Comp. ¶¶ 14-16.[2]  Pursuant to a task order under the RIO contract,

KBR occupied and restored the Qarmat Ali water treatment facility in Iraq after active hostilities

passed the facility by.  *Id*. ¶ 23.  KBR recognized in 2003 that sodium dichromate, a carcinogen,

was present at the facility, and incurred costs associated with it.  *Id*. ¶¶ 23, 28, 31.   British and

American soldiers who claimed that they were exposed to the sodium dichromate at Qarmat Ali

sued KBR in United States district court, alleging negligence.  *Id*. ¶ 33.

After suit was brought against it in 2008, KBR notified the Government.  Comp. ¶ 34.  In

December 2010 KBR requested that the Government indemnify it for its costs of defending the

lawsuit.  *Id*. ¶ 42.  The Government declined to indemnify KBR.  *Id*. ¶ ¶ 43-44.

On November 16, 2012, KBR brought suit in this Court, case number 12-780 (the first

lawsuit).  The first lawsuit alleged that the Government breached the RIO contract by failing to

indemnify KBR for claims brought by third parties, Comp780 ¶ 31; failing to pay for the costs of

defending the suit, *id*. ¶ 33; and refusing to participate in the defense of the lawsuits.  *Id*. ¶ 37.[3]

On December 21, 2012, KBR filed a certified claim with the RIO contracting officer,

seeking indemnity from the Government.  Comp. ¶ 2;[4] *see also* Exhibit A (the claim).  Because

the first lawsuit was pending, the contracting officer declined to rule upon it.  *Id.* ¶ 3.  On March

5, 2013, KBR filed this suit with the Court, relying upon what KBR considered to be the

contracting officer's deemed denial of the December 2012 claim.  *Id*. ¶¶ 2, 3.  On February 21,

---

[2] "Comp. ¶__" refers to a paragraph of the first amended complaint filed in this action; "Comp780 ¶__" refers to a paragraph of the complaint that KBR filed in related case, Number 12-780, filed on November 16, 2012, in this Court.

[3] KBR alleges in its amended complaint in this suit that the first suit was brought because of the Government's failure to assume responsibility for the defense of third party lawsuits. Comp. ¶ 45.  While that was *one* of the bases of the first suit, KBR does not mention the fact that, through the first lawsuit, it also seeks payment of its defense expenses and any damages that may be awarded against it.

[4] KBR's amended complaint contains two paragraphs numbered, "2."  We refer to the second such paragraph here.

2013, KBR presented a new claim to the contracting officer, alleging that, in addition to the

grounds set forth in its December 2012 certified claim, it was entitled to relief from the

contracting officer because the Government had wrongfully failed to adequately fund the RIO

contract.  Comp. ¶ 4; Exhibit B (the 2013 claim).   The contracting officer declined to consider

this claim because of the pending lawsuit.  Comp. ¶ 5.   In its amended complaint, KBR alleges

that "the relief sought in the previous suit [*i.e.*, No. 12-780] is subsumed within the relief sought

in the instant case." *Id.* ¶ 45.

<u>ARGUMENT</u>

Dismissal of this case is required for two different reasons.  First, KBR's filing of the first

suit for essentially the same claim, prior to providing the certified claim to the contracting officer

that is the basis for this lawsuit has placed the Government in an untenable position:  any

decision by the contracting officer upon the certified claim would impinge upon the Department

of Justice's (DOJ) authority to control litigation in which the Government is a party.  Thus, the

contracting officer was precluded from issuing a final decision as a result of KBR's earlier

actions.  And without a contracting officer's decision or deemed denial, this Court does not

possess jurisdiction to consider this case.[5]

Second, even if KBR's claims were properly considered and decided by the contracting

officer, the statute of limitations would still preclude consideration of KBR's claims regarding

breach of the RIO contract that allegedly occurred in 2003.  Because no CDA claim was filed

---

[5] There is an exit to this procedural thicket of KBR's making:  were KBR to dismiss its
pending suits against the Government relating to the indemnity agreement, it could then re-
submit its certified claim to the contracting officer.  After the contracting officer had the
opportunity to consider the claim and make a determination, KBR could file suit if it were
disappointed with the result.  The difference between this sequence of events and the events that
have taken place thus far is that the contracting officer would have had the opportunity to
consider KBR's claims – which he has not had up until this point.

within six years of the alleged breach, these allegations fall outside of the statute of limitations, and claims upon them must be dismissed for lack of jurisdiction.

I.   KBR Bears The Burden Of Proof For An RCFC 12(b)(1) Motion

When a motion to dismiss under RCFC 12(b)(1) challenges the Court's subject-matter jurisdiction, the plaintiff bears the burden of proving jurisdiction by a preponderance of the evidence.  *See Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). Undisputed factual allegations contained in the complaint must be treated as true.  *See Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995).  However, in resolving disputes regarding jurisdictional facts, the Court may look beyond the pleadings.  *See Rocovich v. United States*, 933 F.2d 991, 993 (Fed. Cir. 1991).  If the Court finds that it lacks subject-matter jurisdiction, dismissal of the complaint is necessary.  *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

II.  KBR's Filing Of Its First Suit Prevented The Contracting Officer From Considering The Claims That Are The Basis For This Case

A.  Submission Of A Valid, Certified Claim Is A Prerequisite To Jurisdiction In This Court

The Tucker Act, grants this Court jurisdiction to "render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States."  28 U.S.C. § 1491(a)(1).  When the provisions enacted originally as the Contract Disputes Act of 1978 ("CDA"), 41 U.S.C. §§ 601-613, and now found at 41 U.S.C. §§ 7101-7109 apply, the relevant portion of the Tucker Act is § 1491(a)(2), which provides in part: "The Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 7104(b)(1) of title 41 . . . ."  28 U.S.C. § 1491(a)(2); s*ee Alliant Techsystems, Inc. v. United States*, 178 F.3d 1260, 1264 (Fed. Cir. 1999).

In granting jurisdiction to this Court, the Tucker Act also waives sovereign immunity for claims within that jurisdictional grant. *United States v. Mitchell*, 463 U.S. 206, 212 (1983). The provisions of 41 U.S.C. §§ 7101-7109 "operate as limits" upon this waiver of sovereign immunity. *See Inter-Coastal Xpress, Inc. v. United States*, 296 F.3d 1357, 1365 (Fed. Cir. 2002).

For applicable contracts, including the contract at issue in this case, 41 U.S.C. § 7103(a)(1) requires that "[e]ach claim by a contractor against the Federal Government relating to a contract shall be submitted to the contracting officer for a decision." 41 U.S.C. § 7103(a)(1). If the contracting officer denies the claim or fails to issue a decision within the time allowed, the contractor may bring an action in this Court. 41 U.S.C. § 7104(b)(1). In the absence of a valid claim and a contracting officer's final decision, the Court lacks jurisdiction. *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed. Cir. 2010); *England v. Swanson Group, Inc.*, 353 F.3d 1375, 1379 (Fed. Cir. 2004).

B.   Filing Of A Lawsuit Divests The Contracting Officer Of Authority To Consider The Same Claim

It is well established that "[o]nce a claim is in litigation, the Department of Justice gains exclusive authority to act in the pending litigation." *Sharman Co. v. United States*, 2 F.3d 1564, 1571 (Fed. Cir. 1993), *overruled on other grounds by Reflectone, Inc. v. Dalton*, 60 F.3d 1572 (Fed. Cir. 1995). As a consequence, the contracting officer is "divested of his authority to make a final decision on the claim." *Id.*; *see also Case, Inc. v. United States*, 88 F.3d 1004, 1009 (Fed. Cir. 1996); *K-Con Building Systems, Inc. v. United States*, 107 Fed. Cl. 571, 592 (2012).

The repercussions upon the Court's jurisdiction are significant: when a contracting officer is precluded from considering a claim because of pending litigation, the "denial" of that claim does not trigger the Court's jurisdiction because it is a "nullity." *Sharman*, 2 F.3d at 1572; *Case*, 88 F.3d at 1009.

C.     KBR's First Lawsuit Is The Same Claim As Presented To The Contracting
       Officer In December 2012

The question of whether the claim is the "same" as the lawsuit for purposes of divesting the contracting officer of jurisdiction may be addressed by the test articulated in *Scott Timber Co. v. United States*, 333 F.3d 1358 (Fed. Cir. 2003): it is the same if the two "arise from the same operative facts [and] claim essentially the same relief." *Id*. at 1365; *see also K-Con*, 107 Fed. Cl. at 592 (reciting *Scott Timber* test for contracting officer divestiture). It does not matter if the theories for legal recovery are the same or not. *Scott Timber*, 333 F.3d at 1365. On the other hand, sharing the same underlying facts is insufficient to make the claim the same if different relief is sought. *Case*, 88 F.3d 1010.

Here the underlying operative facts are identical in the first lawsuit and in the December 2012 claim: the Government has refused to defend KBR and indemnify it for lawsuits stemming from exposure of third parties to sodium dichromate at Quarmat Ali. Moreover, the first lawsuit and the December 2012 claim and March 2013 supplement (which merely added an additional legal theory) seek essentially the same relief, namely, consequential damages for the Government's failure to indemnify KBR. *Cf. Scott Timber*, 333 F.3d at 1366 (claim before the contracting officer "sought the same remedy sought from the trial court, namely consequential damages for the alleged breach"). Because they are the same claim, the contracting officer did not possess the authority to consider the December 2012 claim and its March 2013 supplement.

We anticipate that KBR will argue that the amount of money is different in the claim and in the lawsuit, thus making them "different." To be sure, the first lawsuit does not explicitly request a particular amount of money, although it does reference over $15 million in expenses already incurred. *See* Comp780 ¶ 36. This is a different amount than in the December 2012 claim, which requests over $23 million. *See* Exhibit A, p. 29. Nevertheless, the difference in the

amount of money is of no analytical consequence here.  KBR has merely incurred additional

defensive costs for the existing Qarmat Ali district court litigation as time has gone by and, if

those costs were to increase in coming months as that litigation proceeded, KBR would certainly

not be required to file a new certified claim in order to secure the Court's jurisdiction to grant it

relief for them.  If the claim is the same for obtaining the jurisdiction of this Court, it should be

the same for purposes of the contracting officer's authority to consider it.  Moreover, the policy

considerations that preclude the contracting officer from considering matters already under

litigation would apply equally whether or not the amount of money claimed had increased from

the time of the original lawsuit to the time of the later claim:  action by the contracting officer on

the later claim would plainly intrude into the conduct of the litigation, which is, first and last, the

province of the Department of Justice.  *Sharman*, 2 F.3d at 1571.

      The jurisdictional basis for this lawsuit is the December 2012 claim and its February

2013 supplement.  Comp. ¶¶ 2, 4.  Because the contracting officer did not possess the authority

to consider the claim(s), this case must be dismissed.[6]  *Sharman*, 2 F.3d at 1571; *Case*, 88 F.3d at

1009.

III.    **KBR's Claims Alleging Breach Of Contract In 2003 Were Not Filed Within The Statute Of Limitations**

    A.    **The CDA's Statute Of Limitations Requires The Filing Of A Claim Within Six Years Of The Time That The Contractor Suffers Injury**

      By law, each claim by a contractor against the Government relating to a CDA contract

must be submitted within six years after the accrual of the claim.  41 U.S.C. § 103(a)(4)(A).

---

[6]  Although the entirety of the complaint should be dismissed, if the Court were to find that some, but not all, of the claims brought in the December 2012 claim were not included in the first lawsuit, the Court should at least dismiss those claims brought by that first suit and which the contracting officer could not consider.  *See K-Con*, 107 Fed. Cl. at 593 (dismissing some claims, while allowing others to survive).

Addressing the statute of limitations for such claims, the statute requires that "[e]ach claim by a contractor against the Federal Government relating to a contract . . . shall be submitted within 6 years after the accrual of the claim." 41 U.S.C. § 7103(a)(4)(A). The Federal Circuit has explained, in the analogous context of the six-year limitations period provided by 28 U.S.C. § 2501, that a claim first accrues for statute of limitations purposes "when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action." *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998) (citation omitted). Generally, for example, "[i]n the case of a breach of a contract, a cause of action accrues when the breach occurs." *Id.* (citation and quotation marks omitted); *see also FloorPro, Inc. v. United States*, 680 F.3d 1377, 1381 (Fed. Cir. 2012). Moreover, "[t]he question whether the pertinent events have occurred is determined under an objective standard; a plaintiff does not have to possess actual knowledge of all the relevant facts in order for the cause of action to accrue." *San Carlos Apache Tribe v. United States*, 639 F.3d 1346, 1350 (Fed. Cir. 2011) (quoting *Fallini v. United States*, 56 F.3d 1378, 1380 (Fed. Cir. 1995)).

In addition, although a claim does not accrue until the claimant has suffered damages, "it is not necessary for purposes of claim accrual that the claimant be able to calculate the precise, final quantum of damages[.]" *Alder Terrace*, 161 F.3d at 1377 (citations omitted). Hence, the Federal Circuit has "soundly rejected the notion that the filing of a lawsuit can be postponed until the full extent of the damage is known. . . . [F]or purposes of determining when the statute of limitations begins to run, the proper focus must be upon the time of the [defendant's] acts, not upon the time at which the *consequences* of the acts [become] most painful." *San Carlos Apache Tribe*, 639 F.3d at 1354 (discussing *Navajo Nation v. United States*, 631 F.3d 1268, 1277 (Fed. Cir. 2011) (emphasis in original) (additional citations and internal quotation marks omitted).

The Federal Acquisition Regulation (FAR), which governs Government contracts, equally reflects these principles, stating that "[a]ccrual of a claim means the date when all events, that fix the alleged liability of either the Government or the contractor and permit assertion of the claim, were known or should have been known.  For liability to be fixed, some injury must have occurred.  However, monetary damages need not have been incurred."  48 C.F.R. § 33.201; *see also Sys. Dev. Corp. v. McHugh*, 658 F.3d 1341, 1345-46 (Fed. Cir. 2011) (discussing claim accrual pursuant to FAR 33.201); *Envt'l Safety Consultants, Inc. v. United States*, 97 Fed. Cl. 190, 195 (2011) (same).

B.   KBR's Breach Of Contract Claims Relating To The Environmental Conditions At Qarmat Ali Accrued By Late 2003 – More Than Nine Years Before Its Claim

As pled in its amended complaint, KBR alleges that the Government was under a contractual obligation to provide it with a "benign work environment" free of environmental and industrial hazards, Comp. ¶ 19, which the Government breached by directing KBR to work at Qarmat Ali without first ensuring that the location was free of environmental and industrial hazards. *Id*. ¶ 69.  Within a few months of beginning work at Qarmat Ali (by June 2003 at the latest) KBR became aware of the presence of the sodium dichromate there.  *Id*. ¶ 26.  And shortly thereafter, KBR incurred costs as a result of the sodium dichromate, including "encapsulating" it.  *Id*. ¶ 31.   According to KBR, the Government reimbursed it for these costs. *Id*.

Thus, KBR was well aware of the "environmental conditions" breach by mid-2003 at the latest, but its claim was filed in December 2012 – some nine years later.  The statute of limitations should thus preclude this basis for KBR's lawsuit.  41 U.S.C. § 7103(a)(4)(A).

We expect that KBR will argue that, since it was compensated for its additional environmental remediation costs in 2003, it suffered no injury until the much later lawsuits were

filed, thus, the statute would not have begun running until 2008.  Such an argument would be flawed because the alleged breach is no less a breach because KBR was compensated for it: KBR alleges that it incurred costs as a result.  Comp. ¶ 31.  And even if its initial costs were minimal compared to the costs it would later incur when it was subjected to the district court litigation, "the proper focus must be upon the time of the [defendant's] acts, not upon the time at which the *consequences* of the acts [become] most painful."  *San Carlos Apache Tribe*, 639 F.3d at 1354.  If the Government, in fact, breached the RIO contract by sending KBR into less benign conditions than contractually required, and KBR was required to incur costs as a result, as it claims, then the 2012 claim was brought three years too late.  This portion of KBR's complaint must be dismissed.

## CONCLUSION

For these reasons, we respectfully request that the Court dismiss the complaint for lack of jurisdiction.

Respectfully submitted,

STUART F. DELERY
Principal Deputy Assistant Attorney General

Jeanne E. Davidson
JEANNE E. DAVIDSON
Director

s/ Bryant G. Snee
BRYANT G. SNEE
Deputy Director

OF COUNSEL:                           s/ J. Reid Prouty
ALEX P. HONTOS                        J. REID PROUTY
Trial Attorney                        Senior Trial Counsel
                                      Commercial Litigation Branch
                                      Civil Division
                                      Department of Justice
                                      P.O. Box 480
                                      Ben Franklin Station
                                      Washington, D.C.  20044
                                      Tele:  (202) 305-7586
                                      Fax:   (202) 514-7969


May 22, 2013                          Attorneys for Defendant