**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

KELLOGG BROWN & ROOT
SERVICES, INC.,

        Plaintiff,

    vs.

THE UNITED STATES OF AMERICA,

      Defendant.

Case No. 1:13-cv-00169-LJB

Judge Bush

ORAL ARGUMENT REQUESTED

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## **TABLE OF CONTENTS**

**Page**

I.    QUESTION PRESENTED ..................................................................................1

II.   STATEMENT OF THE CASE .............................................................................2

III.  ARGUMENT ......................................................................................................5

     A.    This Court Has Jurisdiction to Review the Government's "Deemed Denial"
           of KBRSI's Certified Monetary Claims ....................................................5

           1.    A Pending Lawsuit Divests a Contracting Officer of Authority to
                Consider Claims Only If They are Identical to, and "Mirror
                Images" of, the Claims in the Lawsuit .........................................6

           2.    The Two Certified Monetary Claims That Form the Basis For this
                Suit Differ Significantly From the Nonmonetary Claim That Forms
                the Basis For KBRSI's 2012 Lawsuit .........................................9

     B.    All of KBRSI'S Claims Were Submitted Within the Six-Year Statute of
           Limitations ..............................................................................................11

IV.   CONCLUSION..................................................................................................14

**<u>Appendix of Exhibits</u>**

Exhibit 1 - Mar. 19, 2003 Memo of Decision from Secretary of Army ...........................................3

Exhibit 2 - Feb. 11, 2013 Army Response to Dec. 2012 Certified Claim .......................................4

Exhibit 3 - Mar. 29, 2013 Army Response to Feb. 2013 Certified Claim .......................................4

Exhibit 4 - Dec. 29, 2010 Letter to Contracting Officer from KBR ................................................9

<h1 style="text-align:center"><u>TABLE OF AUTHORITIES</u></h1>

**Page(s)**

CASES

*Alder Terrace, Inc. v. United States,*
161 F.3d 1372 (Fed. Cir. 1998) ........................................................................... 13

*Buse Timber & Sales, Inc. v. United States,*
45 Fed. Cl. 258 (1999) ......................................................................................... 8

*Case v. United States,*
88 F.3d 1004 (Fed. Cir. 1996) .................................................................... passim

*Croman v. United States,*
44 Fed. Cl. 796 (1999) ........................................................................................ 14

*Extreme Coatings, Inc. v. United States,*
No. 11-895C, 2012 WL 4747248 (Fed. Cl. Oct. 3, 2012) .................................. 8, 10

*Hughes Aircraft Co. v. United States,*
534 F.2d 889, (1976)) ......................................................................................... 7

*Modeer v. United States,*
68 Fed. Cl. 131 (2005) ........................................................................................ 5

*SAB Construction, Inc. v. United States,*
66 Fed. Cl. 77 (2005) ...................................................................................... 11, 13

*San Carlos Irrigation and Drainage Dist. v. United States,*
877 F.2d 957 (Fed. Cir. 1989) ............................................................................ 12

*Scott Timber Co. v. United States,*
333 F.3d 1358 (Fed. Cir. 2003) ........................................................................ 8, 14

*Sharman Co. v. United States,*
2 F.3d 1564 (Fed. Cir. 1993), *overruled on other grounds by Reflectone, Inc. v.*
*Dalton,* 60 F.3d 1572 (Fed. Cir. 1995) ........................................................... 6, 7, 8

*Uniglobe Gen'l Trading & Contracting Co., W.L.L. v. United States,*
107 Fed. Cl. 423 (2012) .................................................................................... 5, 13

STATUTES

41 U.S.C. § 7103(a)(4)(A) ......................................................................................... 11

41 U.S.C. § 7104(b)(1) ............................................................................................... 5

iii

## I.   <u>QUESTION PRESENTED</u>

The motion to dismiss filed by the United States ("Motion") contains erroneous and misleading statements of law and fact and should be denied.  First, with respect to the government's argument that this Court lacks jurisdiction, it is undisputed that Plaintiff Kellogg Brown & Root Services, Inc. ("KBRSI") previously submitted two certified monetary claims for sum certain to the United States Army Corps of Engineers ("USACE") arising out of numerous alleged breaches by the government of the Restore Iraqi Oil ("RIO") cost reimbursement, award fee contract that USACE issued to KBRSI in 2003.  It is also undisputed that the USACE contracting officer failed to issue a decision regarding the certified monetary claims within the required sixty days and that KBRSI subsequently filed the instant suit.

The government's sole basis for arguing that this Court lacks jurisdiction is that the contracting officer was powerless to decide the certified monetary claims because they were "substantially the same" as the claim contained in *KBRSI v. United States*, No. 12-780 C, a previously filed lawsuit pending before this Court.  Somewhat inconsistently, the United States previously moved to dismiss that first lawsuit on the grounds that KBRSI had failed to give the contracting officer an opportunity to review the claim by submitting a certified claim for sum certain, exactly what KBRSI did here.

In any event, as demonstrated below, the certified claims at issue in this case raise different claims for relief, rely on different legal theories, and arise from government failures that are different and distinct from those raised in the previously filed lawsuit.  The contracting officer thus was fully empowered to decide the certified claims, and his failure to do so constitutes a deemed denial sufficient to satisfy the jurisdictional requirements of this Court. *See, e.g., Case v. United States,* 88 F.3d 1004, 1010-11 (Fed. Cir. 1996) (requiring a narrow construction of the Department of Justice's "broadly inclusive" power to oversee litigation).

Second, contrary to the government's Motion, the portion of KBRSI's breach of contract claim arising from the government's failure in 2003 to ensure a "benign" worksite for KBRSI as required by the RIO contract is not foreclosed by the six-year statute of limitations.  As the government has acknowledged, a breach of contract claim accrues only when a contractor suffers a compensable injury or damages.  KBRSI suffered no such injury or damages until 2012, when the government first declined to pay KBRSI's outside legal costs, or at the earliest 2008, when KBRSI first began to incur the unreimbursed legal costs that are the subject of KBRSI's December 2012 certified monetary claim.  Consequently, this basis for recovery is not barred by the statute of limitations.

## II.   <u>STATEMENT OF THE CASE</u>[1]

Pursuant to the RIO contract, in the opening months of Operation Iraqi Freedom, KBRSI began performing restoration work of the Iraqi oil infrastructure, including the Qarmat Ali Water Treatment Plant ("Qarmat Ali").  FAC ¶¶ 8-9.  The RIO contract required the United States to ensure that a work site was "benign" and free of hazards, including environmental hazards, prior to directing KBRSI to begin work there.  *Id.* ¶ 19.  Because of the ongoing hostilities and physical threats, the United States Army assigned National Guard personnel to provide force protection for KBRSI personnel at Qarmat Ali and elsewhere throughout Iraq.  *Id.* ¶ 18.

Months after work began at Qarmat Ali, the presence of sodium dichromate, a toxic anti-corrosive previously used by the Iraqis, was discovered.  *Id.* ¶¶ 21-23.  With the approval of USACE, KBRSI undertook a remediation effort, the costs of which KBRSI recovered from USACE in accordance with the cost-reimbursement provisions of the RIO contract.  *Id.* ¶ 31.

---

[1] KBRSI's First Amended Complaint ("FAC") sets forth the underlying facts in greater detail, and the United States concedes that the FAC's factual allegations must be taken as true at this stage of the proceedings.  Motion at 1 n.1.

National Guard personnel later filed various lawsuits against KBRSI alleging harmful exposure from sodium dichromate, a toxic anti-corrosive previously used by the Iraqis at Qarmat Ali. British military personnel who had been assigned to provide perimeter security at Qarmat Ali also joined the litigation against KBRSI.  *Id.* ¶ 33.  KBRSI provided timely and continuing notice of these lawsuits to USACE beginning in 2009.  *Id.* ¶ 34-35.

In accordance with Public Law 85-804 and FAR 52.250-1, the RIO contract contained a provision by which the United States agreed to indemnify KBRSI against unusually hazardous risks that might arise during contract performance, including the risk of "sudden or nonsudden release of . . . toxic or hazardous substances or contaminants into the environment . . . ."  Ex. 1 (March 19, 2003 Memorandum of Decision from Secretary of Army); *see also* FAC ¶ 16.  In 2010, KBRSI formally requested that "USACE participate directly in these [sodium dichromate] lawsuits and/or assume direct responsibility for their defense" in accordance with the terms of the indemnification provision.  KBRSI's 2010 claim did not request any monetary relief.  The USACE contracting officer ultimately denied this nonmonetary claim in a final decision dated November 18, 2011.  FAC ¶¶ 42-44.  In November 2012, KBRSI appealed the final decision in *KBRSI v. United States*, No. 12-780 C ("KBRSI's 2012 lawsuit") in which KBRSI alleged that the United States had failed to comply with the RIO contract's indemnification provision.  *Id.* ¶ 45.

In July 2012, KBRSI submitted to USACE vouchers for payment under the RIO contract for various outside legal costs related to the Qarmat Ali sodium dichromate litigation.  Despite repeated requests from KBRSI and its submission of various additional information requested by the government regarding the allowability and allocability of the legal costs, USACE ultimately failed to pay the vouchers.  *Id.* ¶¶ 46-48.  KBRSI thereafter in December 2012 submitted a

certified claim for a sum certain to the contracting officer to recover over $23 million in outside legal costs. *Id.* ¶ 49. The 30-page certified monetary claim contains various theories of recovery. The bulk of the claim's entitlement section focused on the RIO contract's cost-recovery provisions, including FAR 52.216-7 and related FAR sections. The certified monetary claim also referenced the RIO contract's "Insurance—Liability to Third Persons" provision (FAR 52.228-7), the 85-804 indemnification provision, and the RIO contract's underlying requirement that the United States ensure that worksites like Qarmat Ali were "benign" and free of environmental hazards before directing KBRSI to begin work.

Based on additional communications from the United States citing a lack of contract funding as a basis for non-payment of the vouchers submitted by KBRSI, on February 21, 2013, KBRSI submitted another certified monetary claim seeking to recover its outside sodium dichromate legal expenses. This certified monetary claim alleged, as an additional breach of contract and basis for recovery, that the United States had failed adequately to fund the RIO contract. *Id.* ¶ 52.

The contracting officer declined to issue a decision on both certified monetary claims, stating that the claims were "substantially the same" as KBRSI's 2012 lawsuit. Ex. 2 (February 11, 2013 Army Response to December 2012 Certified Claim); Ex. 3 (March 29, 2013 Army Response to February 2013 Certified Claim). KBRSI filed the instant lawsuit on March 5, 2013, and amended its complaint on April 30, 2013.

III.   **ARGUMENT**

    A.   **This Court Has Jurisdiction to Review the Government's "Deemed Denial" of KBRSI's Certified Monetary Claims**

Under the Contract Disputes Act ("CDA"), a contracting officer's denial or deemed denial of a contractor's claim is appealable to the United States Court of Federal Claims.  The jurisdictional prerequisites for filing suit are well-established:

> Before filing suit in this court under the CDA, a plaintiff must first submit a written claim to the contracting officer for a final decision. . . .  The submission of a written claim to the contracting officer and a final decision on that claim are jurisdictional prerequisites to a suit in this court.

*Uniglobe Gen'l Trading & Contracting Co., W.L.L. v. United States*, 107 Fed. Cl. 423, 430 (2012) (citing 41 U.S.C. § 7103(a)).  *See also Modeer v. United States*, 68 Fed. Cl. 131, 135 (2005) (CDA provides that failure by a contracting officer to issue a final decision within the required time period constitutes a "deemed denial" and empowers the contractor to bring suit in this Court); 41 U.S.C. § 7104(b)(1).

In this case, there is no question that KBRSI submitted two written, certified, monetary claims for a sum certain to the USACE contracting officer and that the contracting officer declined to decide those claims within the sixty-day statutory time period.  The United States nonetheless argues that this Court still lacks jurisdiction to hear the dispute.  The Court should reject the government's argument because it erroneously states the applicable law and misconstrues the plain language of KBRSI's certified monetary claim.

1.      **A Pending Lawsuit Divests a Contracting Officer of Authority to Consider Claims Only If They are Identical to, and "Mirror Images" of, the Claims in the Lawsuit**

The United States argues, and KBRSI does not dispute, that "[o]nce a claim is in litigation, the Department of Justice gains exclusive authority to act in the pending litigation." Motion at 5 (quoting *Sharman Co. v. United States*, 2 F.3d 1564, 1571 (Fed. Cir. 1993), *overruled on other grounds by Reflectone, Inc. v. Dalton*, 60 F.3d 1572 (Fed. Cir. 1995). As a result, when litigation commences on a particular claim, a contracting officer loses the authority to act on the same claim being litigated. *Id.* According to the government, the certified monetary claims in this case are "the same claim" as the claim presently under consideration by this Court in KBRSI's 2012 lawsuit.

The government's position, however, is inconsistent with the very narrow and requiring definition the Federal Circuit uses to test whether claims qualify as the "same." In short, the claims must be "identical"—nothing less will do. *See Case v. United States*, 88 F.3d 1004 (Fed. Cir. 1996). In *Case*, a contractor appealed two final decisions terminating a contractor for default and demanding the repayment of unliquidated progress payments. In its appeal (*Case I*), the contractor asserted that the government's delivery schedule was unreasonable and that the government had waived the schedule. The government counterclaimed for the unliquidated progress payments.

While *Case I* was pending, the contractor submitted to the contracting officer a separate claim for equitable adjustment and lost profits, asserting that its delayed performance was caused by allegedly defective government specifications. After the contracting officer failed to issue a final decision on this equitable adjustment claim, the contractor filed a second lawsuit (*Case II*). The government asserted that the Court had no jurisdiction in *Case II* because the filing of *Case I* put the subject matter of *Case II* "in litigation" and divested the contracting officer of authority to

6

issue a final decision in *Case II*.  After this Court dismissed *Case II* on other grounds and the contractor appealed to the Federal Circuit, the government renewed its jurisdictional argument.

The Federal Circuit *rejected* the government's argument.  In doing so, it noted that the statutory scheme granting the Department of Justice "exclusive and plenary power" to oversee litigation was "broadly inclusive" and hence "must be narrowly construed."  *Id.* at 1011 (quoting *Hughes Aircraft Co. v. United States*, 534 F.2d 889, 901 (1976)).  A contracting officer loses authority to decide only those claims that are "mirror images" of claims already in litigation.  Whether two cases arise "out of the same underlying set of facts" and involve similar allegations does not matter for purposes of this analysis if "the two cases involve[] different claims."  *Id.* at 1010.  The Federal Circuit concluded that the contractor's first complaint, although it superficially referenced defective specifications, actually focused on the unreasonable nature of the delivery schedule and whether the government had waived the schedule.  By contrast, the second claim focused on defective specifications and sought relief over and above the entitlement claimed in the first suit.

In *Case*, the Federal Circuit closely construed its prior decision in *Sharman*.  In that case, a contractor repudiated a contract to make steel water tanks for the United States.  The government terminated the contract for default.  The contractor then filed suit against the government seeking to invalidate the default termination, recover uncompensated costs, and retain certain progress payments it already had received.  The United States moved to dismiss the action because it was not based on a final decision.  Thereafter, the contracting officer issued a "final decision" identifying the government's right to recover the progress payments.  The contractor thereafter filed an amended complaint, to which the government filed a counterclaim for the progress payments upon which it ultimately prevailed at trial.

On appeal, the Federal Circuit held that jurisdiction was lacking because no valid final decision had been issued.  Once the contractor made the progress payment claim the subject of litigation, the contracting officer had no authority to issue a final decision regarding it.  *Sharman Co.,* 2 F.3d at 1572.  In reaching this conclusion, the Federal Circuit carefully pointed out that the claims in question were not just similar, not just related, but *identical*:  "[T]his asserted entitlement to the progress payments in [the] original complaint is the same 'claim' as stated by [the] amended complaint and the government's counterclaim . . . ."  *Id.* at 1571.

The Federal Circuit's guidance in *Case* and *Sharman* as to what constitutes "the same claim" for jurisdictional purposes has been followed closely in other decisions.  *See, e.g.*, *Buse Timber & Sales, Inc. v. United States*, 45 Fed. Cl. 258, 266 (1999) ("[M]ere overlap of legal and factual issues between that which is in court and that which is put in issue by a claim pending before the contracting officer . . . " is not sufficient; "the complaint and the matters pending before the contracting officer have to be the same CDA claim."); *Extreme Coatings, Inc. v. United States*, No. 11-895C, 2012 WL 4747248, at *3 (Fed. Cl. Oct. 3, 2012) ("Where two claims are not 'mirror images,' the authority of the contracting officer to decide the claims is not divested.").[2]

As set forth below, the two certified monetary claims are far from "mirror images" of, or "identical" to, the claim at issue in *KBRSI v. United States*, No. 12-780.

---

[2] The United States sidesteps the impact of the "mirror image" language from *Case* and argues instead that it is sufficient if the claims "arise from the same operative facts [and] claim essentially the same relief."  Motion at 6 (quoting *Scott Timber Co. v. United States*, 333 F.3d 1358, 1365 (Fed. Cir. 2003).  In *Scott Timber*, however, the Federal Circuit was not addressing whether pending litigation on one claim divested a contracting officer of authority to decide another claim.  Rather, the issue in *Scott Timber* was the degree to which a contractor's claim during litigation could differ from the claim as it was originally presented to the contracting officer.  *Id.*

2.     **The Two Certified Monetary Claims That Form the Basis For this Suit Differ Significantly From the Nonmonetary Claim That Forms the Basis For KBRSI's 2012 Lawsuit**

KBRSI's 2012 lawsuit and the certified monetary claims at issue here are not "mirror images"; they arise from different factual underpinnings; are based on different legal theories of recovery; and seek relief from different government decisions that have harmed KBRSI in different ways.

KBRSI's December 2010 nonmonetary claim requested that "USACE participate directly in these [sodium dichromate] lawsuits and/or assume direct responsibility for their defense" as required by the terms of the 85-804 indemnification provision and its definition of unusually hazardous risks.  The nonmonetary claim did not seek the recovery of any legal costs, nor did it rely upon any bases for relief other than the RIO contract's 85-804 indemnification clause.  Ex. 4 (Dec. 29, 2010 Letter to Contracting Officer from KBR).  The USACE contracting officer ultimately denied KBRSI's request, again relying solely on the terms of the 85-804 indemnification clause.  KBRSI based the complaint in its 2012 lawsuit on the language of the indemnification clause and the November 2011 denial by the contracting officer.  The government has acknowledged that "the first lawsuit does not explicitly request a particular amount of money . . . ."  Motion at 6.  Instead, the issue raised in KBRSI's 2012 lawsuit focused on whether the United States breached its obligations under the 85-804 indemnification provision when it declined to step in and assume the defense of the third-party sodium dichromate lawsuits.

By contrast, as described in detail in the FAC, KBRSI presented the two certified monetary claims at issue here to the contracting officer after the USACE failed to pay vouchers submitted by KBRSI seeking reimbursement of outside legal costs.  It is this failure to pay—not a failure to assume KBRSI's defense—that is at the core of the certified monetary claims.  The certified claims attribute the government's failure to pay the vouchers to various breaches of the

RIO contract unrelated to the indemnity provision, including:  the government's failure to comply with the contract's cost reimbursement provisions; the government's failure to abide by the contract's  "Insurance—Liability to Third Persons" clause (FAR 52.228-7); the government's failure to ensure that Iraqi worksites were free of environmental hazards before directing KBRSI to begin work; and the government's failure to provide adequate funding for the RIO contract when it knew that KBRSI was incurring substantial defense costs related to the sodium dichromate issue.  <u>None of these alleged breaches is at issue in the first lawsuit</u>.

The government points out that one of the certified monetary claims contains a short discussion of the government's failure to comply with the 85-804 indemnification provision. That two-paragraph discussion was inaccurately characterized by the United States as being the focus of the instant case.  *Id.* at 1 (suggesting that "[t]he merits of this case are *primarily centered* upon the application of an indemnity clause contained in the 'Restore Iraqi Oil' (RIO) contract, between the Government and KBR for 'unusually hazardous risks.'") (emphasis added).

Moreover, KBRSI's 2012 lawsuit alleges that the government breached the 85-804 indemnification provision by failing to assume the defense of the third-party sodium dichromate lawsuits.  The government's failure to reimburse KBRSI for its outside legal costs represents a separate, independent breach of the 85-804 indemnification provision—together with the other contractual provisions referenced in the FAC.

In short, the government's representation that this case must be dismissed because KBRSI filed the 2012 lawsuit "for essentially the same claim" raised in the certified monetary claims, Motion at 3, is both factually incorrect and legally questionable.  The contracting officer's statement that the claims are "substantially the same"—a statement with which KBRSI strongly disagrees—similarly is insufficient.  *See Extreme Coatings*, 2012 WL 4747248, at *3 (rejecting

government's argument that a contracting officer lacks authority to decide a claim "nearly identical" to one already in litigation).  The claims must be *identical*, "alleg[ing] the *same* entitlement to the *same* amount based on the *same* triggering events . . . ."  *Id.* (emphasis added).  Here, KBRSI's claims are substantially different from the claim raised in KBRSI's 2012 lawsuit and arise from distinct government decisions.  Consequently, the government's motion to dismiss for lack of jurisdiction should be denied.

### B.   <u>All of KBRSI'S Claims Were Submitted Within the Six-Year Statute of Limitations</u>

Contrary to the government's contentions, none of the bases for recovery identified in KBRSI's certified monetary claims are barred by the six-year limitations period contained within 41 U.S.C. § 7103(a)(4)(A).  The United States argues that KBRSI's breach claims fall beyond that period, to the extent they arise from USACE's failure in 2003 to identify and remediate potential sodium dichromate contamination at Qarmat Ali before directing KBRSI to begin work.  However, the statute of limitations for that particular contractual noncompliance did not begin to run until 2008, when the third-party tort suits alleging harmful exposure to sodium dichromate were filed against KBRSI and KBRSI's breach claim accrued.

As the government has acknowledged, a claim accrues on:

> the date when *all* events, that fix the alleged liability of either the Government or the contractor and permit assertion of the claim, were known or should have been known.  For liability to be fixed, *some injury must have occurred*.  However, monetary damages need not have been incurred.

FAR 33.201 (emphasis added).  *See also SAB Construction, Inc. v. United States*, 66 Fed. Cl. 77, 88 (2005) (A claim accrues "when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action.") (internal quotations omitted).  In short, KBRSI's breach of contract claim did not accrue until KBRSI was able to assert a valid claim against the government.

A breach of contract claim requires more than contractual noncompliance.  The necessary elements of a breach of contract claim include: (1) a valid contract; (2) an obligation or duty arising from that contract; (3) a breach of that duty; and (4) *damages caused by the breach*.  *San Carlos Irrigation and Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989) (emphasis added).  Indeed, the government itself concedes that KBRSI's claims did not accrue until KBRSI had been injured and suffered damages from the government's non-compliance. Motion at 8-9.

As set forth in the FAC, the government failed to ensure that the Qarmat Ali worksite was "benign" and free of environmental hazards before directing KBRSI to begin work there in 2003.  Thereafter, the presence of sodium dichromate was discovered, and KBRSI performed additional work under USACE's direction.  Significantly, USACE reimbursed KBRSI in 2003-04 for the costs of its encapsulation efforts and other additional sodium dichromate-related costs under the reimbursement provisions of the RIO contract.  Accordingly, KBRSI suffered no injury nor any damages at that time because of the government's initial failure to ensure benign conditions at Qarmat Ali.  Later, beginning in 2006-07, when former KBRSI employees alleged harmful exposure to sodium dichromate and brought claims against KBRSI in arbitration, USACE reimbursed KBRSI for the related legal defense costs, again leaving KBRSI "whole" and without injury.

It was not until late 2008 when third-party tort suits were first brought against KBRSI, and it was not until 2012 when the contracting officer declined to pay KBRSI's reimbursement requests.  KBRSI thus could not have suffered "injury" from the government's contractual non-compliance until 2012 or, at the earliest, 2008, and KBRSI's certified claims and this lawsuit were brought well within the six-year limitations period.

12

This conclusion is consistent with this Court's analysis in *SAB Construction* ("*SAB*"). The contractor in *SAB* tried to recover, as breach of contract damages, self-insurance costs for potential, but not yet ripe, damages and liabilities arising from its employees' asbestos and lead exposure. This Court recognized that it is "not always the case" that a claim for breach of contract accrues and the statute of limitations begins running at the time of a breach. 66 Fed. Cl. at 87. Indeed, "[i]t is too well established to require citation of authority that a claim does not accrue until the claimant has suffered damages." *Id.* (internal quotations omitted). Indeed, "[f]or liability to be fixed, some injury must have occurred." *Id.* at 88 (internal quotations omitted). *See also Uniglobe General Trading & Contracting Co.*, 107 Fed. Cl. at 431 (noting that "[i]n order for a claim to accrue, 'some injury must have occurred'") (quoting FAR 33.201). This Court in *SAB* affirmed the contracting officer's denial of SAB's premature claim given that no damages had been incurred yet, *i.e.*, no lawsuits or claims had been brought against SAB. 66 Fed. Cl. at 87. Once the "plaintiff does incur liability for asbestos and lead exposure, for cleaning up the landfill, or for penalties sometime in the future, then the six year statute of limitations for breach of contract actions in this court will run from that date and not from the breach." *Id*; *See also Alder Terrace, Inc. v. United States*, 161 F.3d 1372 (Fed. Cir. 1998) (recognizing that although precise damages need not be able to be quantified precisely for claims to begin to accrue, damages must have been incurred.).

As in *SAB*, no injury or damages were suffered by KBRSI in 2003 at the time of the government's contractual non-compliance. After third-party lawsuits were filed against KBRSI starting in late 2008, KBRSI timely notified USACE and requested that USACE comply with its indemnification obligations under the contract. To preserve its rights, KBRSI appealed USACE's denial of its indemnification request in KBRSI's 2012 lawsuit. KBRSI then filed

13

certified monetary claims for sums certain, which the contracting officer declined to decide, and KBRSI then filed the instant matter.  Thus, the statute of limitations has not expired and KBRSI timely filed its claims against the United States.

## IV.    <u>CONCLUSION</u>

For years, the United States has known of KBRSI's claims and avoided resolving them. It previously moved to dismiss KBRSI's 2012 lawsuit on the grounds that KBRSI failed first to submit a certified claim for sum certain to the contracting officer.  Now that KBRSI has done so, the United States argues that the contracting officer is powerless to consider it.  This "procedural thicket" of which the government complains is a mirage envisioned by the government in an apparent effort to put off, yet again, an independent review of the government's numerous breaches of the RIO contract.  No such conundrum exists in actuality:  through its 2012 lawsuit, KBRSI timely appealed the contracting officer's November 2011 refusal to step in and assume the defense of the third-party sodium dichromate lawsuits; and through the instant lawsuit, KBRSI timely appealed the contracting officer's refusal to pay KBRSI's outside legal expenses related to the sodium dichromate discovered at Qarmat Ali during its RIO contract work.

The USACE contracting officer now has had the opportunity "to receive and pass judgment on [KBRSI's] entire claim" and has declined to do so.  *See Scott Timber Co.*, 333 F.3d at 1366 (citing *Croman v. United States*, 44 Fed. Cl. 796, 801-02 (1999)).  For the reasons given above, the Court has jurisdiction to review the deemed denial of KBRSI's certified monetary claims and should deny the United States' motion to dismiss.

Dated:  June 21, 2013

Respectfully submitted,

/s/ Raymond Biagini
Raymond Biagini
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC  20006
Telephone: (202) 496-7500
Facsimile: (202) 496-7756
rbiagini@mckennalong.com

*Attorney for Kellogg Brown & Root Services, Inc.*

OF COUNSEL:
Herbert Fenster
hfenster@mckennalong.com
McKenna Long & Aldridge LLP
1400 Wewatta Street, 7th Floor
Denver, Colorado  80202
Telephone: (303) 634-4000
Facsimile: (303) 634-4400

Kurt Hamrock
khamrock@mckennalong.com
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC  20006
Telephone: (202) 496-7500
Facsimile: (202) 496-7756

DC 51026730.3