IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| KELLOGG BROWN & ROOT SERVICES, INC., | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 13-169C |
| v. | ) | Judge Bush |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

Defendant, the United States, respectfully files this reply in support of its motion to dismiss.

ARGUMENT

Our motion to dismiss rests upon two bases: first, that KBR's actions precluded the contracting officer from issuing the final decision that is the prerequisite to this Court's jurisdiction; second, that KBR's claims alleging a breach of contract due to the conditions it was tasked with performing in should be precluded by the statute of limitations. With respect to the first basis for our motion to dismiss, the crux of the case comes down to whether the contracting officer truly had an opportunity to consider the claims that are the basis of the suit brought here. He did not. There is no way that the contracting officer could have considered KBR's claims here without impermissibly intruding upon the prerogatives of the Department of Justice (DOJ) to lead litigation of KBR's earlier-filed lawsuit upon the same subject matter. With respect to the statute of limitations, any injury suffered by KBR for the conditions at the Qarmat Ali site were manifested within months of its occupying the site – far more than six years before KBR filed its first claim.

I.      **The Claim Upon Which This Suit Is Based Is The Same As The Earlier Lawsuit, Thus Divesting The Contracting Officer Of Authority To Consider It**

        A.      **A Claim Is "The Same" If It Has The Same Operative Facts And Seeks The Same Relief**

KBR's opposition to our motion to dismiss (KBR Opp.) applies an overly strict test for determining whether a claim is "the same" for purposes of divesting the contracting officer of jurisdiction.   *See* KBR Opp. 6-8.   Neither *Case Inc. v. United States*, 88 F.3d 1004 (Fed. Cir. 1996), nor *Sharman Co. v. United States*, 2 F.3d 1564 (Fed. Cir. 1993), *overruled on other grounds by Reflectone, Inc. v. Dalton*, 60 F.3d 1572 (Fed. Cir. 1995), require that a "same claim" be identical to the last detail.   In *Case*, the claim and the complaint were far different:   although the underlying facts were the same, in the first lawsuit, Case challenged a default termination and the Government's claim for unliquidated progress payments, while in the second lawsuit, Case sought an equitable adjustment for costs that it incurred because of an overly strict Government inspection and also sought lost profits.   88 F.3d at 1010-11.   In *Sharman*, although the Federal Circuit did reference the "mirror image" claim to the Government's counterclaim, *see* 2 F.3d at 1573, that language was used to describe why a Government counterclaim could not be considered by the contracting officer in that case (*i.e.*, it was the reverse analog of the contractor's claim).   *Id*.   Indeed, the *Sharman* Court's determination that "mirror image claims" precluded consideration by the contracting officer supports our reading of the "same" claim:   the claims cannot have been strictly identical because each document plainly sought the fact-finder to come to greatly different conclusions based upon the same dispute.   What was salient was that they were disputing a particular entitlement to money based upon the same underlying set of circumstances.

Thus, this Court's determination in *K-Con Building Systems, Inc. v. United States*, to utilize the analysis of the Court of Appeals for the Federal Circuit in *Scott Timber Co. v. United States*, 333 F.3d 1358 (Fed. Cir. 2003), is the proper one for determining whether the claims are "the same." *See K-Con*, 107 Fed. Cl. 571, 592 (2012).  Notably, although KBR accuses us of "sidestepping" the "mirror image" language by our reliance on *Scott Timber*, which KBR asserts is inapt, *see* KBR Opp. 8, n.2, it is KBR that has ignored *K-Con*.

To be sure, KBR has cited two decisions of this Court that appear to apply an excessively strict test for making a "same claim" determination, namely *Buse Timber & Sales, Inc. v. United States*, 45 Fed. Cl. 258 (1999) and the unpublished decision of *Extreme Coatings, Inc. v. United States*, 2012 WL 4747248 (Fed. Cl.), *see* KBR Opp. 8, but neither case goes as far as KBR would have it.   In *Buse*, the Court held that "mere overlap of legal and factual issues" before the Court and in the claim did not make the two "the same" when the bases for relief were as different as a breach of contract (the claim before the contracting officer) and a takings (the complaint). 45 Fed. Cl. at 266.  We have never suggested that "overlap of factual and legal issues" was sufficient to make a claim "the same."  Likewise, in *Extreme Coatings*, although the Court did, indeed, assert that it was comparing the claims as "mirror images," 2012 WL 4747248, at *3, the claims were actually far more different than those here:  in one, the plaintiff was seeking reimbursement for costs; while, in the other, plaintiff was seeking the different remedy of a re-evaluation of its performance under the contract. *Id*. at *4.

Thus, *K-Con*'s application of the *Scott Timber* test (which is plenty rigorous), is the most consistent with Federal Circuit law and common sense:  claims are the same if the two "arise from the same operative facts [and] claim essentially the same relief." 333 F.3d at 1365.  It would be odd indeed, and contrary to the policy of preserving the DOJ's authority in litigation, if

minor changes in the amount of money sought or labels upon the legal bases for relief – the sorts

of changes typical in the course of litigation – would hamstring the DOJ's authority over the

litigation, while imposing no requirement upon the contractor to submit new claims.  Such a

result is not required by the law.

B.      KBR's Claims Are The Same As Its Earlier Lawsuit

In our opening brief, we explained that in both the recent claims and the earlier lawsuit,

the facts alleged by KBR were the same:  KBR had performed at Qarmat Ali under the RIO

contract and had been sued by National Guardsmen and British troops who provided security at

the site based upon the existence of sodium dichromate, a carcinogen.  The first suit and the

recent claims both sought consequential damages resulting from the Government's decision not

to indemnify KBR.  In response, KBR first confuses the issue, by referencing its December 2010

"non-monetary claim" to the contracting officer and seeking to have the Court consider what it

sought in that "claim," as opposed to what was actually in the first lawsuit that it filed with this

Court in 2012.  *See* KBR Opp. 9.  Of course, it is not the content of the first claim to the

contracting officer that divests the contracting officer of jurisdiction, but the contents of the first

lawsuit. The review of that lawsuit, as discussed in our opening brief, demonstrates the 2013

claims to have been the same as that suit.

The 2012 lawsuit alleged four distinct breaches of contract by the Government:  its

failure to indemnify KBR for claims brought by third parties, Comp780 ¶31[1]; its failure to

compensate KBR for the cost of defending the suits, *id.* ¶ 33; its failure to participate in the

defense of the lawsuits, *id.* ¶37; and its failure to find Qarmat Ali to be "benign and free of

---

[1]  "Comp780 ¶__" refers to a paragraph of the complaint that KBR filed in case no. 12-780 before this Court. "Comp ¶__" refers to a paragraph in the first amended complaint filed in the present case.

environmental hazards." *Id*. ¶¶ 24-25.  And, contrary to the implication that it sought only

nonmonetary relief, the suit explicitly stated that KBR was entitled to the costs of defending its

lawsuits, including liability that might be assessed against it in those suits, *see id*. ¶¶ 36-37, and

requested, in its prayer for relief, that it be "indemnified" and that the Government pay all "fees,

costs, settlements, final judgments and all other damages resulting from such tort litigation."

*See* Comp780, Prayer For Relief, Sections A and B.   This is not the "nonmonetary" suit that

KBR would have the Court believe that it filed.  *See* KBR Opp. 9.

KBR characterizes the claims submitted after its 2012 complaint as challenging the

Government's failure to pay it reimbursement for outside legal costs, KBR Opp. 9, but this issue

was squarely raised in KBR's 2012 complaint.  Comp780 ¶ 33.  KBR also asserts that it is

seeking reimbursement for these fees under different legal theories in the new claims, such as

simple cost reimbursement provisions of the RIO contract; FAR provision 52.228-7; the failure

to make the area safe from environmental hazards; and the failure to provide adequate funding

for the contract.  KBR Opp. 9-10.  The different legal theories are of no moment.  KBR

challenged the same actions of the contracting officer in its 2012 lawsuit as it did in the

subsequent claims, and is seeking the same relief:  consequential damages for the Government's

failure to indemnify KBR for costs that followed from the lawsuits brought by individuals who

served at the Qarmat Ali site.

Even if KBR were right, that the invocation of subtly different contract provisions as

bases for relief from the same contracting officer inaction made the claim "different," it has

made no response to our fallback position that at least some of KBR's claims should be

dismissed because the contract provisions at issue were raised in the 2012 suit.  These portions of

the claims include those relying upon the indemnity clause pursuant to Public Law 85-504 and

FAR section 52.250-1, *see* Comp780 ¶¶ 29-30, as well as the environmental hazards issue. *Id*. ¶¶ 24-25. Although all of the claims upon which KBR bases this lawsuit should be barred, at the very least claims based upon these two predicates, for which KBR has presented no defense, should be dismissed.

II.     KBR's Environmental Hazard Claim Must Be Dismissed For Failure To Comply With The Statute Of Limitations

We explained in our opening brief that KBR had failed to file a claim relating to the environmental hazards that it allegedly encountered at Qarmat Ali until more than six years after it became aware of them, thus precluding suit in this Court. *See* 41 U.S.C. § 103(a)(4)(A). As we anticipated, KBR has responded by alleging that it suffered no injury from the environmental hazards until the lawsuits were brought in 2008, thus the claims were timely. KBR Opp. 12. Although KBR's arguments are superficially appealing and somewhat similar to those successfully brought in the case of *SAB Construction, Inc. v. United States*, 66 Fed. Cl. 77 (2005), cited in KBR's brief, *see* KBR Opp. 12-13, the better position is that, because KBR indisputably incurred costs as a result of the alleged breach of contract, the statute of limitations began to run at that time, rather than some later date.

It is worth noting that the discussion of the statute of limitations in *SAB* was *dicta*. In that case, the contractor had not incurred the relevant costs for which is was seeking compensation, and the Court explained that certain breach of contract claims might be brought at a later time after costs had been incurred. *See SAB*, 66 Fed. Cl. at 87-88. Notably, the Court also explained that one potential avenue of relief for the contractor might be the Federal Torts Claims Act with its own statute of limitations. *Id*. at 87, n.9. Thus, although we do not deny that *SAB* appears to be favorable to KBR's position here, its persuasive power is limited.

The better legal position is the Government's:  if the environmental conditions at Qarmat Ali in 2003 were a breach of the contract, KBR was aware of this breach by late 2003 at the latest.  Comp. ¶ 26.  Moreover, KBR did incur costs as a result of the alleged breach.  *Id.* ¶ 31. KBR has not explained why the breach should be considered any less a breach because it was later compensated for the costs.  Indeed, if the costs incurred by KBR (for which it was compensated) truly flowed from a breach of contract, it would have been more consistent with the facts as KBR knew them to seek an equitable adjustment (as did the contractor in *SAB*) than simply bill those costs as being incurred pursuant to the contract since KBR now alleges that the costs did not stem from the contract, but from its breach.  To be sure, KBR was not aware of the full extent of its alleged injuries in 2003, but it knew enough to bring a claim. *San Carlos Apache Tribe v. United States*, 639 F.3d 1346, 1354 (Fed. Cir. 2011).  Moreover, KBR has no rebuttal to the fact that the relevant FAR section provides that monetary damages need not have been incurred for a claim to accrue.  48 C.F.R. § 33.201; *see also Sys. Dev. Corp. v. McHugh*, 658 F.3d 1341, 1345-46 (Fed. Cir. 2011) (discussing claim accrual pursuant to FAR 33.201); *Envt'l Safety Consultants, Inc. v. United States*, 97 Fed. Cl. 190, 195 (2011) (same).

KBR's allegations that the environmental conditions were a breach of contract were brought too late and should be dismissed.

## CONCLUSION

For these reasons, we respectfully request that the Court dismiss the complaint for lack of jurisdiction.

        Respectfully submitted,

        STUART F. DELERY
        Acting Assistant Attorney General

Jeanne E. Davidson
JEANNE E. DAVIDSON
Director

s/ Bryant G. Snee
BRYANT G. SNEE
Deputy Director

OF COUNSEL:                                   s/ J. Reid Prouty
ALEX P. HONTOS                                J. REID PROUTY
Trial Attorney                                Senior Trial Counsel
                                              Commercial Litigation Branch
                                              Civil Division
                                              Department of Justice
                                              P.O. Box 480
                                              Ben Franklin Station
                                              Washington, D.C.  20044
                                              Tele:  (202) 305-7586
                                              Fax:   (202) 514-7969

July 8, 2013                                  Attorneys for Defendant