# In the United States Court of Federal Claims

No. 13-169 C

(Filed March 7, 2014)

| | | |
|---|---|---|
| * * * * * * * * * * * * * | * | Contract Dispute; 41 U.S.C. |
| KELLOGG BROWN & ROOT | * | § 7103 (Supp. V 2011); RCFC |
| SERVICES, INC., | * | 12(b)(1); *Sharman* Analysis – |
| | * | Contracting Officer's Authority |
| *Plaintiff*, | * | to Consider Claims Barred by |
| | * | Litigation Pending in This |
| v. | * | Court; Failure to Present Claim |
| | * | for Sum Certain to Contracting |
| THE UNITED STATES, | * | Officer; Failure to Wait Sixty |
| | * | Days before Filing Suit under a |
| *Defendant*. | * | Deemed Denial Theory. |
| * * * * * * * * * * * * * | * | |

*Raymond Biagini*, Washington, DC, for plaintiff.  *Herbert Fenster*, Denver, CO, and *Kurt Hamrock*, Washington, DC, of counsel.

*J. Reid Prouty*, United States Department of Justice, with whom were *Stuart F. Delery*, Assistant Attorney General, *Bryant G. Snee*, Acting Director, Washington, DC, for defendant.  *Alex P. Hontos*, United States Department of Justice, Washington, DC, of counsel.

---

## OPINION

---

**Bush**, *Senior Judge*.

Before the court is defendant's fully briefed motion to dismiss, based on Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC). Oral argument was held on August 20, 2013; thereafter, supplemental briefing was

permitted.[1]  For the reasons set forth herein, defendant's motion to dismiss is granted.

## BACKGROUND[2]

### I. The Contract

The parties refer to the contract at issue in this case, Contract No. DACA63-03-D-0005, as the Restore Iraqi Oil (RIO) contract. Am. Compl. ¶¶ 8-9. According to plaintiff, the RIO contract services were provided to the United States Army Corps of Engineers (the Corps) by Kellogg Brown & Root Services, Inc. (KBR) in support of Operation Iraqi Freedom, beginning in 2003. *Id.* ¶¶ 2, 23. The services "assist[ed] in assessing, refurbishing, and rebuilding the Iraqi oil infrastructure." *Id.* ¶ 8.

### II. The Dispute

According to the complaint, the RIO contract included an indemnification provision against "unusually hazardous" risks in contract performance, as well as other provisions relevant to plaintiff's claims in this suit. Am. Compl. ¶¶ 11-13, 19. While working at the Qarmat Ali Water Treatment Plant (Qarmat Ali), KBR personnel were provided with "force protection" by the government, protection which involved National Guard personnel and British soldiers. *Id.* ¶¶ 21, 33. Sodium dichromate, a potentially hazardous chemical, had been used at Qarmat Ali and the site may have been contaminated with this chemical. *Id.* ¶ 31.

After the presence of sodium dichromate was discovered, plaintiff alleges that KBR was reimbursed for the additional costs of encapsulation of "potential

---

[1]/ Plaintiff's supplemental brief included a cursory request for a second oral argument which the court rejects as unnecessary. Pl.'s Supp. Br. at 1-2.

[2]/ The facts recounted here are taken primarily from the first amended complaint (Am. Compl.), with additional facts provided by the parties' briefs and attachments thereto and, unless otherwise noted, are undisputed. The court makes no findings of fact in this opinion other than those necessary to determine this court's jurisdiction over the complaint. A companion decision issued earlier today dismissing *Kellogg Brown & Root Services, Inc. v. United States*, No. 12-780C (Fed. Cl. Mar. 7, 2014) (*KBR I*), provides a more detailed discussion of the background facts relevant to this case. The complaint in *KBR I* is cited as "780 Compl."

sodium dichromate contamination" at the Qarmat Ali site. Am. Compl. ¶ 31. Nonetheless, KBR was eventually sued by persons involved in force protection at Qarmat Ali who claimed that they had been injured from exposure to sodium dichromate and that KBR was subject to tort liability for those injuries (hereinafter, the third-party suits). *Id.* ¶ 33. A dispute arose between KBR and the Corps as to whether the indemnification provision of the RIO contract required that the government provide "indemnification for claims asserted by third persons for personal injury allegedly arising out of risks previously defined as 'unusually hazardous' under Contract No. DACA63-03-D-0005 and that [the Corps] actively engage in the defense and resolution of certain claims and disputes arising under the contract." Pl.'s Resp. Ex. 4 at 1.

### III. The December 2010 Claim Was Denied by the Contracting Officer in November 2011

As discussed more thoroughly in *KBR I*, a claim was submitted to the contracting officer (CO) in December 2010, which, when standing alone as well as when interpreted in light of a June 2011 letter from KBR to the CO, contained requests for monetary and nonmonetary relief. The claim included a request for monetary relief, in the form of indemnification for the litigation defense and settlement expenses of KBR in the third-party suits, as well as a request that the Corps actively participate in the litigation of the third-party suits against KBR. These requests for money damages and participation were denied in a November 2011 letter from the CO.

### IV. *KBR I* Was Pending when KBR Submitted Certified Claims to the Contracting Officer in December 2012 and February 2013

KBR submitted invoices to the Corps in July and August of 2012 for its litigation expenses in the third-party suits. Am. Compl. ¶ 46. These invoices also included legal fees and other costs incurred by KBR when responding to a Department of Defense Inspector General's investigation of the "alleged sodium dichromate exposure at Qarmat Ali" and related events ("the IG costs"). *Id.* ¶¶ 41, 46. The vouchers were not paid. In November 2012, KBR filed suit in this court, Case No. 12-780C, contesting the denial of the December 2010 claim submitted to the CO (the 780 suit).

Approximately a month after filing the 780 suit and while the 780 suit was

3

pending, KBR, on December 21, 2012, submitted a certified claim to the contracting officer for $23,146,997.59, which represented all of KBR's litigation expenses in the third-party suits as of that date (the December 2012 claim). Def.'s Mot. Ex. A; Am. Compl. ¶ 49. However, although the December 2012 claim specifically alleged KBR's entitlement to the IG costs, and KBR had attached copies of unpaid vouchers that included the IG costs, the December 2012 claim did not include or expressly set forth the IG costs in the quantum of the certified claim. *See* Def.'s Mot. Ex. A at 14, 16, 19, 21; *id.* Ex. B at 16 n.5; Am. Compl. ¶ 52.

While the 780 suit was still pending in this court, on February 21, 2013 KBR filed a second certified claim with the CO for $23,597,168.27 (the February 2013 claim), which again represented all of KBR's litigation expenses in the third-party suits as of that date, but now included the IG costs as well. Am. Compl. ¶ 52. The increased quantum of $450,170.68 reflects that the February 2013 claim includes the IG costs and, possibly, two additional months of litigation costs in the third-party suits. Def.'s Mot. Ex. B at 16 & n.5; Am. Compl. ¶ 52 (stating that "the February certified claim updated the quantum sought to include outside legal costs KBR[] incurred in responding to the Department of Defense subpoena [the IG costs], which had been discussed but not included in the quantum sought in the December 2012 certified claim"). The proffered reason for the filing of the second certified claim was that the "instant Claim encompasses the same legal fees and involves many of the same underlying facts [as the December 2012 claim], but seeks recovery based on a separate and distinct theory." Def.'s Mot. Ex. B. at 2; *see* Am. Compl. ¶ 52 ("The February certified claim arises from the same set of operative facts as the December 2012 claim, but was based on [the Corps'] failure to reimburse KBR[] for its legal costs because of an alleged lack of funding.").

V.  **The Contracting Officer Declines to Issue a Decision on KBR's Certified Claims, Citing Pending Litigation in This Court; KBR Files Another Suit in This Court and Later Amends the Complaint**

On February 11, 2013, the CO acknowledged receipt of the December 2012 claim, but stated that because the pending 780 suit was "substantially the same" as the December 2012 claim, he was no longer "the federal authority with respect to this matter." Pl.'s Resp. Ex. 2. On March 5, 2013, KBR filed its complaint in *this* case, Case No. 13-169C (the 169 suit). On March 29, 2013, the CO acknowledged receipt of the February 2013 claim, but stated that because the 780 suit and the 169 suit were "substantially the same" as the February 2013 claim, once again he was

4

no longer "the federal authority with respect to this matter." Pl.'s Resp. Ex. 3.

On April 30, 2013, plaintiff amended the complaint in the 169 suit.[3] Although the amended complaint alleges that "[m]ore than 60 days ha[ve] passed since KBR[] submitted its December 2012 and February 2013 certified claims without a decision by the CO," Am. Compl. ¶ 54, this statement, although true, is somewhat misleading. When the 169 suit was initiated in this court on March 5, 2013, the contracting officer had received the February 21, 2013 claim only twelve days earlier. Thus, the court's analysis of its jurisdiction over the 169 suit must take into account this twelve-day period, as well as the sixty-eight day period separating the submission of the February 2013 claim to the CO and the filing of the amended complaint on April 30, 2013. The court reserves a more thorough discussion of KBR's claims, and defendant's challenge to this court's jurisdiction over those claims, for the analysis section of this opinion.

## DISCUSSION

### I. Standard of Review for a Motion to Dismiss for Lack of Jurisdiction

In rendering a decision on a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), this court must presume all undisputed factual allegations to be true and construe all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 814-15 (1982); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988). Nonetheless, plaintiff bears the burden of establishing subject matter jurisdiction, *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)), and must do so by a preponderance of the evidence, *Reynolds*, 846 F.2d at 748. When, as here, jurisdictional facts are challenged, the court may weigh the evidence presented and may make findings of fact pertinent to its jurisdiction. *See, e.g., Ferreiro v. United States*, 350 F.3d 1318, 1324 (Fed. Cir. 2003) ("A trial court may weigh relevant evidence when it considers a motion to dismiss that challenges the truth of jurisdictional facts alleged in a complaint . . . .") (citations omitted).

---

[3]/ As stated above, the court cites to the amended complaint as "Am. Compl."; the original complaint in this case is cited as "Compl." *See supra* note 2.

Plaintiff's burden, in this circumstance, is to establish jurisdiction by competent proof. *McNutt*, 298 U.S. at 189. The court's fact-finding in this regard is not limited to the pleadings. *E.g.*, *Rocovich v. United States*, 933 F.2d 991, 994 (Fed. Cir. 1991) (citations omitted); *Reynolds*, 846 F.2d at 747. If jurisdiction is found to be lacking, this court must dismiss the action. RCFC 12(h)(3).

## II.    Pertinent Jurisdictional Requirements of the Contract Disputes Act

The Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 7101-7109 (Supp. V 2011), is a money-mandating source of law sufficient to confer jurisdiction in this court under the Tucker Act, 28 U.S.C. § 1491 (2012). *See* 28 U.S.C. § 1491(a)(2) (citing 41 U.S.C. § 7104(b)(1)); *Salt River Pima-Maricopa Indian Cmty. v. United States*, 86 Fed. Cl. 607, 616 (2009) (citations omitted). For this court to take jurisdiction over a CDA claim, however, the contractor must have first presented a written claim to the contracting officer. 41 U.S.C. § 7103(a)(1)-(2); *see, e.g.*, *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1328 (Fed. Cir. 2010) (*M. Maropakis*) (stating that "for the Court of Federal Claims to have jurisdiction under the CDA, the contractor must submit a proper claim – a written demand that includes (1) adequate notice of the basis and amount of a claim and (2) a request for a final decision"). For monetary claims, the contractor must state the "sum certain" of its claim. *M. Maropakis*, 609 F.3d at 1329. The contractor must submit the claim to the contracting officer within six years after the accrual of the claim. 41 U.S.C. § 7103(a)(4).

Both the presentment requirement and the six-year limitations period for the submission of CDA claims are deemed to be jurisdictional requirements for the litigation of CDA claims in this court. *See, e.g.*, *Arctic Slope Native Ass'n v. Sebelius*, 583 F.3d 785, 793 (Fed. Cir. 2009) (stating that "the timely submission of a claim to a contracting officer is a necessary predicate to the exercise of jurisdiction by a court or a board of contract appeals over a contract dispute governed by the CDA"). For claims that exceed $100,000, a further jurisdictional requirement is that the claim presented to the contracting officer be certified by the contractor. 41 U.S.C. § 7103(b)(1); *Northrop Grumman Computing Sys., Inc. v. United States*, 709 F.3d 1107, 1112 & n.3 (Fed. Cir. 2013) (*Northrop Grumman Computing*). An additional requirement for a CDA claim filed in this court is that the suit be filed within one year of the contractor's receipt of the final decision issued by the contracting officer on that claim. *See* 41 U.S.C. § 7104(b)(3); *Renda*

*Marine, Inc. v. United States*, 509 F.3d 1372, 1380 (Fed. Cir. 2007).

### III.  Analysis

A. **The Monetary Claim in the 780 Suit Is the Same as All But One of the Claims in the December 2012 and February 2013 Claims Presented to the Contracting Officer, Depriving This Court of Jurisdiction over These Claims**

1. *Sharman*

Both parties rely, as they must, on *Sharman Co. v. United States*, 2 F.3d 1564 (Fed. Cir. 1993), *overruled in part on other grounds by Reflectone, Inc. v. Dalton*, 60 F.3d 1572 (Fed. Cir. 1995) (*en banc*), for its precedential analysis of the effect of pending litigation on a CDA claim presented to a contracting officer. The key passage in *Sharman* states that

> [o]nce a claim is in litigation, the Department of Justice gains exclusive authority to act in the pending litigation. That exclusive authority divests the contracting officer of his authority to issue a final decision on the claim.

2 F.3d at 1571-72 (citations omitted). Thus, a suit predicated on the final decision of such a claim submitted to a contracting officer, or the deemed denial of such a claim presented to a contracting officer,[4] is not properly before this court because the contracting officer's final decision or deemed denial of the claim would be a

---

[4] A deemed denial occurs when the contracting officer has failed to render a decision on a valid claim within sixty days; thus, after sixty days have elapsed with no decision on such a claim by a contracting officer, the claimant may appeal the deemed denial to a board of contract appeals or this court. 41 U.S.C. § 7103(f). Plaintiff's 169 suit is premised on deemed denials of the December 2012 and February 2013 claims, Am. Compl. § 54; Pl.'s Resp. at 1, 5, although, as noted *supra*, only twelve days separated the submission of the February 21, 2013 claim and the filing of this suit.

"nullity." *Id.* at 1572; *see Case, Inc. v. United States*, 88 F.3d 1004, 1009 (Fed. Cir. 1996) (stating that "when a contracting officer lacks authority to issue a final decision on a claim, there can be no valid deemed denial of the claim so as to confer CDA jurisdiction" on this court). Yet, for the *Sharman* jurisdictional bar to apply, the claim in the pending litigation must be the "same claim" or "effectively the same claim" as the claim submitted to the contracting officer. *Sharman*, 2 F.3d at 1570.

### 2. The Proper Test for Claims Barred by *Sharman*

The breadth or narrowness of the *Sharman* jurisdictional bar is disputed by the parties. According to plaintiff, relying principally on *Case*, only "mirror image" claims or "identical" claims qualify as the same claims for *Sharman* purposes and fall prey to the bar. Pl.'s Resp. at 6-8. According to defendant, relying principally on *Scott Timber Co. v. United States*, 333 F.3d 1358 (Fed. Cir. 2003), and *K-Con Building Systems, Inc. v. United States*, 107 Fed. Cl. 571 (2012), claims which "'arise from the same operative facts [and] claim essentially the same relief'" are the same claim for *Sharman* purposes. Def.'s Mot. at 6 (quoting *Scott Timber*, 333 F.3d at 1365, and citing *K-Con*, 107 Fed. Cl. at 592). Although KBR cites two decisions of this court which appear to adopt plaintiff's strict and narrow definition of the "same claim" in the *Sharman* context, Pl.'s Resp. at 8 (citing *Extreme Coatings, Inc. v. United States*, No. 11-895C, 2012 WL 4747248, at *3 (Fed. Cl. Oct. 3, 2012), and *Buse Timber & Sales, Inc. v. United States*, 45 Fed. Cl. 258, 266 (1999)), the court is persuaded that *Sharman*, *Case*, and *Scott Timber* are correctly interpreted in this court's *K-Con* decision. The proper focus, in a *Sharman* analysis, is on operative facts and the relief sought so as to determine whether a CDA claim is the same as another. This view is supported by *Sharman*, *Case*, and *Scott Timber* and a number of other precedential decisions from the United States Court of Appeals for the Federal Circuit.

### a. The Framing of the "Same Claim" Test in *Sharman* and *Case*

*Sharman* provides no explicit guidance as to the breadth or narrowness of the terms "same claim" or "effectively the same claim." 2 F.3d at 1570. The case

citations in *Sharman* are of some help, however. One of the cases relied upon by the Federal Circuit in *Sharman* for its holding that pending litigation may divest the contracting officer of the authority to decide a CDA claim is *Durable Metal Products, Inc. v. United States*, 21 Cl. Ct. 41 (1990). 2 F.3d at 1571-72 (citing *Durable Metal*, 21 Cl. Ct. at 46). The *Durable Metal* decision noted that this court may issue a decision on fewer than all of the claims presented in a CDA suit, relying on a provision of the CDA now codified at 41 U.S.C. § 7107(3). 21 Cl. Ct. at 46. In the circumstances of that case, the court declined to do so, however, "since none of [the] plaintiff's claims [we]re fully developed to the extent that any one claim could logically and reasonably be separated from another." *Id.*

Thus, although there is no indication that the Federal Circuit in *Sharman* relied on this particular commentary in *Durable Metal*, it is evident that claims which can be logically separated from other claims are not necessarily the "same claim." *See Case*, 88 F.3d at 1010 (holding that the claims in that dispute were not the same because they were "separate and distinct"). Conversely, a claim which cannot logically be separated from another claim may, indeed, be the same claim. *See Sharman*, 2 F.3d at 1571 (noting that the claims at issue in that dispute were the same because they "allege[d] entitlement to the same money based on the same partial performance, only under a different legal label"). The court turns now to *Hughes Aircraft Co. v. United States*, 534 F.2d 889 (Ct. Cl. 1976), the other case cited in *Sharman*, for its analysis of the effect of pending litigation on the authority of a government agency to render decisions.

In *Hughes Aircraft* the government argued that pending litigation in a federal court had removed the authority of an executive agency to render a decision on an arguably related matter before the agency. 534 F.2d at 901. The Federal Circuit disagreed, noting that the pending litigation, at the time the disputed agency action was taken, only encompassed matters related to the Skynet II F1 satellite, not the Skynet II F2 satellite. *Id.* at 901-02. Because the agency's decision primarily related to the Skynet II F2 satellite, and because the pending litigation at that time contained no allegations regarding matters related to that Skynet II F2 satellite, the agency's authority to make the decision regarding the Skynett II F2 satellite had not been removed from the agency and transferred to the Department of Justice. *Id.* Thus, in *Hughes Aircraft*, because the claim in the pending litigation addressed different disputed government actions, the agency was not divested of authority to

9

render a decision in a related but separate matter. *Id.* Despite the fact that it is not a CDA case, *Hughes Aircraft* stands for the proposition that related but separate matters do not constitute the same claim for purposes of the *Sharman* jurisdictional bar.

As the court reads the *Case* decision, the test applied there is no different than the one applied in *Sharman*. Although plaintiff suggests that *Case* "closely construed" *Sharman*, Pl.'s Resp. at 7, *Case* focused on whether claims are "separate and distinct," 88 F.3d at 1010; whether claims constitute "'divisible'" parts of a case, *id.* (citing *Joseph Morton Co. v. United States*, 757 F.2d 1273, 1281 (Fed. Cir. 1985)); and, of most practical use to a trial court, whether the specific facts that provide the "grounds" for the claims, as well as the specific monetary relief requested in the claims, are different, *id*. This test is in no way at odds with the analysis applied in *Sharman*. Further, although this test for identifying the "same claims" is indisputably characterized as "narrow[]" by the Federal Circuit, *Case*, 88 F.3d at 1011, the test is nowhere near as narrow as the "identical" or "mirror image" test proposed by plaintiff here. Indeed, as defendant notes, plaintiff's allegation that claims must be "identical" to be the same claim, for the purposes of the *Sharman* inquiry, is nowhere expressed in *Case*.

### b. *K-Con* Applies *Scott Timber* to the *Sharman* Inquiry

Having discerned that *Case* reviewed the factual "grounds" of the claims and the monetary relief sought to identify any claims that would be the "same" and thus barred by the *Sharman* jurisdictional test, it is no surprise, then, that this court in *K-Con* adopted *Scott Timber*'s definition of "same claim" containing elements indistinguishable from those employed in *Case*:

> Thus, if a contractor submits a new claim to the contracting officer while its prior claim is in litigation, and the new claim "arise[s] from the same operative facts, claim[s] essentially the same relief, and merely assert[s] differing legal theories for that recovery," *Scott Timber Co. v. United States*, 333 F.3d 1358, 1365 (Fed. Cir. 2003), the contracting officer lacks the authority to

act on the new claim.

107 Fed. Cl. at 592. All elements of the *Scott Timber* test reflect the test used in *Sharman* and *Case*. *See Case*, 88 F.3d at 1010 (distinguishing between *different* claims sharing the "same underlying facts," which are mere background facts, and the *same* claims which share the "grounds actually asserted" to support claims, which are operative facts); *id.* (noting that the claim in the pending litigation identified $2.8 million as monetary relief, whereas the claim later presented to the contracting officer sought recovery "over and above" the amount sought in the pending litigation of an additional $1.8 million); *Sharman*, 2 F.3d at 1571 (finding claims to be the same despite the use of "different legal label[s]"). This court thus endorses the test for identifying the "same claim" set forth in *Scott Timber* and adopted by *K-Con* for use in the *Sharman* inquiry.

        **c.**        **Other Federal Circuit Decisions Address the "Same Claim" Issue in Various CDA Contexts by Discussing Operative Facts in a Manner Consistent with *Scott Timber***

The need to determine whether a CDA claim is the same as another arises in a variety of contexts. It is not necessary for the purposes of this opinion to examine those contexts in detail. The court notes, simply, that the inquiry commonly focuses on whether the operative facts are the same in two or more CDA claims.

For example, in determining whether claims were distinct and separate, or unitary (all part of the same claim), the Federal Circuit stated:

> Because the Claims Court did not base its analysis on whether the claims presented to the CO arose from a common or related set of operative facts, and the government has not cited support in the record that only a unitary claim exists, we remand for the Claims Court to conduct fact finding consistent with this opinion.

*Placeway Constr. Corp. v. United States*, 920 F.2d 903, 908 (Fed. Cir. 1990).  In another context, to determine whether a CDA claim has been improperly split and the second CDA claim is barred by res judicata principles, this court must examine whether "[t]he two claims plainly are based on a single set of operative facts." *Phillips/May Corp. v. United States*, 524 F.3d 1264, 1272-73 (Fed. Cir. 2008).  In yet another context, a claim was determined to be new, not the same, because "a profound alteration occurred in the scope of th[e] claim," expanding the focus on operative facts from three change orders to a "multiplicity of change orders." *Santa Fe Eng'rs, Inc. v. United States*, 818 F.2d 856, 859 (Fed. Cir. 1987).  All of these cases show the Federal Circuit's consistent approach in determining whether one CDA claim is the same as another.  Following these cases, as well as *Sharman*, *Case*, *Scott Timber* and *K-Con*, this court must examine the operative facts and relief sought in the two CDA claims, not the legal labels placed on those claims, to determine whether those two CDA claims are the same.

> **3.**   **The Same Operative Facts and Essentially the Same Requests for Relief Are Found in the Monetary Claim in KBR's 780 Suit and in the December 2012 and February 2013 Claims**

Although the monetary claim presented in the 780 suit is evident throughout the complaint filed in that case, the most succinct expression of that monetary claim is found in this statement:

> KBR[] is entitled to recover all such fees, costs, and other related expenses in connection with its defense of the various third-party [suits] arising from its work under the RIO contract, including these and other such fees, costs, expenses, and other monetary liabilities that may be incurred in the future.

780 Compl. ¶ 37.  The operative facts for such a claim are not hard to discern.  The costs incurred by KBR in the third-party suits must arise from its work at the Qarmat Ali plant and the presence of sodium dichromate at the site, and the government must have refused to reimburse KBR for these costs.  Here, the same

operative facts underlie the December 2012 and February 2013 claims presented to the CO.  *See* Def.'s Mot. Exs. A-B.  Further, the 780 suit as well as the December 2012 and February 2013 CDA claims sought essentially the same monetary relief, *i.e.*, incurred and future costs of the third-party suits against KBR.  Under the precedent discussed *supra*, pending litigation before this court contained the same claims as those presented to the CO in 2012 and 2013, and he therefore had no authority to consider those claims.  Lacking a final CO decision or a valid deemed denial of KBR's December 2012 and February 2013 claims, this court lacks jurisdiction over all of the claims (save one discussed *infra*) in the 169 suit due to the jurisdictional bar explained in *Sharman*.

Plaintiff's reliance on *Case* to avoid the jurisdictional bar is misplaced.  In *Case* the claims were not the same because they were "separate and distinct."  88 F.3d at 1010.  Different government actions were addressed in the claims (default termination in one, failure to issue an equitable adjustment of the contract in the other), and the monetary relief requested was distinct.  *Id.* at 1010-11.  Here, in contrast, the presence of sodium dichromate at Qarmat Ali and the government's failure to reimburse KBR for the costs of the third-party suits is the focus of both suits, and the monetary relief requested is the same.[5]

The only distinction between the pending litigation (the 780 suit) and the December 2012 and February 2013 claims submitted to the CO and at issue in this case are the legal labels placed on the claims.  In the 780 suit, KBR relied exclusively on the indemnification provision in the RIO contract.  That same provision is just one of several bases for recovery cited in the December 2012 and February 2013 claims submitted to the CO.  These later claims also alleged violations of certain Federal Acquisition Regulation (FAR) provisions including FAR 52.216-7 and FAR 52.228-7, breach of the obligation to provide KBR with a "benign" work environment, and breach of the obligation to ensure that adequate funding is available to pay for services provided under the contract.  Yet, as noted in *Sharman*, a "different legal label" does not transform the same CDA claim into a

---

[5]/ Increases in the amount of a claim due to the mere passage of time do not generally change a CDA claim into a new claim.  *See, e.g.*, *Contract Cleaning Maint., Inc. v. United States*, 811 F.2d 586, 591 (Fed. Cir. 1987) (citing *Tecom, Inc. v. United States*, 732 F.2d 935, 937-38 (Fed. Cir. 1984)).

new claim. 2 F.3d at 1571.

Following *Sharman*, *Case*, *Scott Timber* and *K-Con*, the monetary claim in this suit (except for a small portion discussed *infra*) must be dismissed because the same claim was pending in the 780 suit when the December 2012 and February 2013 claims were submitted to the CO.[6] The court now turns to the one arguably "new" claim presented in the December 2012 and February 2013 certified claims submitted to the CO – the IG costs claim.

**B.      The IG Costs Claim, although Similar in Nature to the Costs of Defending the Third-Party Suits, Is Not Necessarily Barred by the *Sharman* Doctrine, But Is Certainly Barred by the Failure to State a Sum Certain in the December 2012 Claim**

There is no mention of an IG costs claim in the 780 suit, nor are the costs of responding to an IG investigation necessarily subsumed within the costs of responding to the third-party suits against KBR. The December 2012 certified claim clearly attempts to present a claim for IG costs. Def.'s Mot. Ex. A at 14, 16, 19, 21, 29. No dollar amount was set forth therein for the IG costs, although the IG costs claim appears to constitute a substantial portion, if not the entirety, of the $450,170.68 omitted from the December 2012 certified claim. *Id.* Ex. B at 16 & n.5; Am. Compl. ¶ 52. Applying a narrow interpretation of the jurisdictional bar described in *Sharman* and *Case*, plaintiff's IG costs claim does not appear to have been "in litigation," *Case*, 88 F.3d at 1011, when the December 2012 claim was presented to the CO.

The court notes, however, that a contrary conclusion is possible. Plaintiff's IG costs, and its third-party suit costs, both arise from KBR's work at Qarmat Ali and the presence of sodium dichromate at the site. KBR combined in the same invoices its costs from the third-party suits and the IG investigation. Am. Compl. ¶ 46; Def.'s Mot. Ex. A at 16. These legal costs were incurred contemporaneously

---

[6]/ The court need not reach defendant's additional jurisdictional argument that any breach of contract claim related to the government's alleged failure to provide benign site conditions at Qarmat Ali is also barred by the CDA's six-year statute of limitations.

and are closely related.

In light of the foregoing, whether KBR's IG costs claim is truly "separate and distinct" from its third-party suit expenses claim, *Case*, 88 F.3d at 1010, presents a close question. Certainly, the contrast between KBR's legal fees incurred in responding to the IG investigation and KBR's legal fees incurred in responding to the third-party suits is minimal when compared to the "separate and distinct" claims discussed in *Case*. *See* 88 F.3d at 1010-11 (contrasting a claim disputing a default termination, asserting that a delivery schedule was unreasonable and waived, with a claim requesting an equitable adjustment of the contract price, asserting defective specifications and overly strict government inspection). One possibly determinative factor is that KBR's IG costs claim requests a separate amount of money that was not clearly included in the 780 suit. For this reason, the court finds that the *Sharman* analysis does not necessarily bar plaintiff's IG costs claim in the instant suit.

Surviving the *Sharman* analysis provides little benefit to plaintiff, however, because KBR's IG costs claim cannot be considered by this court for a different reason. The IG costs claim in the December 2012 certified claim presented to the CO failed to present a sum certain for IG costs. *See* Am. Compl. ¶ 52; Def.'s Mot. Ex. B at 16 n.5. Failure to present a monetary claim for a sum certain to the CO renders a claim invalid and beyond this court's jurisdiction. *See M. Maropakis*, 609 F.3d at 1329. Accordingly, KBR's monetary claim for IG costs presented in the December 2012 claim must also be dismissed.[7]

### C. The IG Costs Claim in the February 2013 Claim, and Every Other Claim in the February 2013 Claim, Are Barred by KBR's Failure to Await a Deemed Denial before Filing Suit in This Court

---

[7] Although the record before the court is not sufficiently detailed to conclusively decide whether the IG costs claim in the December 2012 claim was large enough to require certification, failure to certify the IG costs claim, unless cured, might provide an independent reason to deprive this court of jurisdiction over the KBR's IG costs claim in the December 2012 submission to the CO. *See* 41 U.S.C. § 7103(b); *Northrop Grumman Computing*, 709 F.3d at 1112 & n.3; *M. Maropakis*, 609 F.3d at 1329.

Finally, the court must conclude that the February 2013 certified claim does not save KBR's IG costs claim. As noted *supra*, the instant suit was filed on March 5, 2013, only twelve days after the February 2013 claim was submitted to the CO. No final decision was issued on the February 2013 claim. No deemed denial of the February 2013 claim could have occurred before April 2013. *See* 41 U.S.C. § 7103(f). Thus, the IG costs claim, as well as the other claims in the February 2013 certified claim, were filed before a deemed denial would permit an appeal of the CO's "decision" in this court. *E.g.*, *Mendenhall v. United States*, 20 Cl. Ct. 78, 84 (1990); *Claude E. Atkins Enters. v. United States*, 15 Cl. Ct. 644, 646 (1988). As this court has explained,

> a claim premature for lack of a contracting officer's final decision does not ripen into a mature claim, while suit is pending, with the passage of sixty (60) days. Once plaintiff's claim . . . became the subject of litigation in this court, upon the filing of the original complaint, the authority to resolve that claim was withdrawn from the contracting officer and resided within the exclusive authority of the Attorney General . . . . Under these circumstances, plaintiff's claim . . . cannot be deemed denied, and the court must dismiss [this claim] on jurisdictional grounds for lack of a contracting officer's final decision.

*Sipco Servs. & Marine Inc. v. United States*, 30 Fed. Cl. 478, 485 (1994) (citations omitted).

Furthermore, plaintiff may not rely on its amended complaint to cure any jurisdictional defect in its premature appeal of a "deemed denial" of the February 2013 claim. Am. Compl. ¶ 54; Pl.'s Resp. at 5. The general rule is that "jurisdiction must be determined" at the time the original complaint was filed. *Sharman*, 2 F.3d at 1569, 1571 n.10. An exception to this rule, that jurisdiction over *new* claims introduced into a CDA suit by an amended complaint is determined as of the time of the filing of the amended complaint, *Buse Timber*, 45 Fed. Cl. at 266 (citing *Sharman*, 2 F.3d at 1569-72, and *Sipco*, 30 Fed. Cl. at 485), is inapplicable here.

16

There is no new claim in the April 30, 2013 amended complaint that was not presented in the March 5, 2013 complaint filed in this court in the 169 suit; the principal difference between the complaints is the addition of a "different legal label," *Sharman*, 2 F.3d at 1571, to support KBR's recovery in this suit. The court notes, in particular, that the IG costs claim is presented in both the March 5, 2013 complaint and in the amended complaint. *Compare* Compl. ¶¶ 38, 43, 62, *with* Am. Compl. ¶¶ 41, 46, 70. Because the amended complaint did not introduce a new claim into the 169 suit, the time of filing of the amended complaint has no bearing on whether a deemed denial of the February 2013 claim had occurred before plaintiff filed suit in this court. Because no deemed denial of the February 2013 certified claim had occurred before the filing of the 169 suit, this court has no jurisdiction over the IG costs claim, or any other claim, in the February 2013 certified CDA claim presented to the CO.

## CONCLUSION

For the foregoing reasons, the court lacks jurisdiction over all of the claims in the amended complaint and it is hereby **ORDERED** that

(1) Defendant's Motion to Dismiss, filed May 22, 2013, is **GRANTED**;

(2) The Clerk's Office is directed to **ENTER** final judgment in favor of defendant **DISMISSING** plaintiff's amended complaint for lack of subject matter jurisdiction, without prejudice; and

(3) Each party shall bear its own costs.

/s/ Lynn J. Bush
LYNN J. BUSH
Senior Judge